| Reinaldo Castillo Camacho<br>    Demandante–Peticionario<br><br>    v.<br><br>Departamento del Trabajo<br>y Recursos Humanos<br>    Demandado–Recurrido | Apelación<br><br>2000 TSPR 142 |
| --- | --- |

Número del Caso: AC–1996–0070

Fecha: 29/09/2000

Tribunal de Circuito de Apelaciones:

Circuito Regional IV

Juez Ponente:

Hon. Yvonne Feliciano

Abogados de la Parte Demandante–Peticionaria:

Servicios Legales de Puerto Rico
Lcdo. Narciso Pagán Valentín
Lcda. Sylvia E. Pérez Arocho

Abogado de la Parte Demandada–Recurrida:

Lcdo. Rafael Concepción Landrón

Materia: Revisión de Decisión de Agencia Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Reinaldo Castillo Camacho

     Demandante-Peticionario

        v.                 AC-1996-70

Departamento del Trabajo
y Recursos Humanos

     Demandado-Recurrido

Opinión del Tribunal emitida por el Juez Presidente, señor Andréu García


San Juan, Puerto Rico, a 29 de septiembre de 2000

¿Tiene derecho a recibir los beneficios que otorga nuestra Ley de Seguridad de Empleo[1] el ciudadano que presta servicios como jurado?

I

El 5 de octubre de 1994, Reinaldo Castillo Camacho, fue seleccionado miembro de un panel de jurados para juzgar el caso de <u>Pueblo</u> v. <u>Nelson Ortiz Alvarez y otros</u>, Núm. ADC 93G0015, en el Tribunal Superior, Sala de Aguadilla. El 24 de octubre del mismo año, el Tribunal secuestró el jurado por aproximadamente cincuenta (50) días.

Atlantic Telecom, patrono de Castillo Camacho, le aseguró que continuaría cubierto por el plan médico de la compañía y no perdería su

---

[1] Ley Núm. 74 de 21 de junio de 1956, según enmendada, 29 L.P.R.A. sec. 701, <u>et. seq.</u>

antigüedad ni posición mientras sirviese de jurado. No obstante, le informó que no recibiría paga durante dicho término. Por esta razón, Castillo Camacho solicitó beneficios por desempleo bajo la Ley de Seguridad de Empleo.

El Negociado de Seguridad de Empleo, a través de su División de Seguro por Desempleo, denegó su pedido. Basó su decisión en la Sec. 4(b)(1) de la Ley de Seguridad, a saber, que Castillo Camacho "no estaba apto o no estaba disponible para realizar trabajo adecuado." No conforme, Castillo Camacho recurrió ante un árbitro de la División de Apelaciones de dicho Negociado. Luego de vista pública, el árbitro confirmó. Concluyó que:

> "La Ley de Seguridad de Empleo de Puerto Rico dispone que para ser elegible a los beneficios por desempleo, el reclamante debe estar apto y disponible para empleo. El Reclamante no cumple con este requisito de ley porque se está desempeñando como jurado en el Tribunal de Aguadilla."

Castillo Camacho apeló al Secretario del Trabajo y Recursos Humanos, quien también confirmó. Acudió entonces en revisión al Tribunal de Primera Instancia, Sala Superior de Aguadilla, el cual revocó.

El Departamento de Trabajo y Recursos Humanos fue en alzada al Tribunal de Circuito de Apelaciones (Hons. Brau Ramírez, Colón Birriel y Feliciano de Bonilla). Este revocó a Instancia bajo el fundamento de que la determinación del Negociado de Seguridad merecía gran consideración y respeto. Coincidió con el Secretario del Trabajo y determinó que, a tenor con la Sec. 4(b)(1) de la Ley, debido a que Castillo Camacho se desempeñaba como jurado, no cualificaba para recibir beneficios de desempleo.

Contra dicha determinación, Castillo Camacho presentó apelación ante nos. Acogimos el recurso certiorari[2] y, con el beneficio de los alegatos de las partes, resolvemos.

II

Reiteramos la normativa de que las conclusiones e interpretaciones de los organismos y agencias administrativas especializadas merecen gran consideración y respeto de los tribunales. M&V Orthodontics v. Negociado de Seguridad de Empleo, 115 D.P.R. 183, 188 (1984). La revisión judicial debe limitarse a determinar si actuaron arbitrariamente, ilegal o en forma tan irrazonable que la actuación constituya un abuso de discreción. Franco Dominicci v. Departamento de Educación, res. en 30 de junio de 1999, 99 TSPR 105.

Sobre este particular, en South P.R. Sugar Co. v. Junta, 82 D.P.R. 847 (1961), expresamos:

> "Es norma reiterada de este Tribunal la de merecerle 'gran consideración y respeto' las conclusiones e interpretaciones de los organismos administrativos especializados. Colonos de Caña de Santa Juana, Inc. v. Junta Azucarera, 77 D.P.R. 392, 396 (1954) y sentencias allí citadas. Cobra más énfasis esa actitud cuando revisamos los fallos de ciertos organismos que tienen a su cargo la reglamentación de procesos técnicos, sociales o económicos. Pero la citada norma no es por sí sola suficiente para enmarcar las relaciones que deben existir entre administradores y jueces en la difícil y a ratos angustiosa tarea de la revisión judicial."

---

[2] En virtud del Art. 3.002 de la Ley de la Judicatura de 1994, según enmendada por la Ley Núm. 248 de 25 de diciembre de 1995, el recurso apropiado es el certiorari, no apelación.

Sin embargo, la deferencia judicial cede cuando el foro administrativo ha errado al aplicar la ley. <u>Reyes Salcedo</u> v. <u>Policía de P.R.</u>, res. en 13 de mayo de 1997, 143 D.P.R. ___ (1997).

A la luz de estos sucintos principios, examinemos la juridicidad de la descalificación de Castillo Camacho a  recibir beneficios de desempleo.

III

El Negociado de Seguridad de Empleo fue creado para  poner en vigor un estatuto, cuya finalidad es "promover la seguridad de empleo facilitando las oportunidades de trabajo por medio del mantenimiento de un sistema de oficinas públicas de empleo y proveer para el pago de compensación a personas desempleadas por medio de la acumulación de reservas". 29 L.P.R.A, sec. 701.

En la consecución de ese fin, la Ley establece un fondo de desempleo, distinto y separado de todos los dineros o fondos del Estado Libre Asociado de Puerto Rico, sufragado por las contribuciones pagadas por los patronos de acuerdo con los parámetros establecidos en la propia Ley.          26 L.P.R.A. sec. 710.

El Secretario del Trabajo y Recursos Humanos tiene la obligación de interpretar y administrar el fondo conforme  la Ley y su primordial objetivo de proteger contra la inseguridad económica y el riesgo del desempleo. En lo pertinente, la <u>Exposición de Motivos</u> señala:

> "El desempleo es materia de interés e incumbencia general; por tanto, la Asamblea Legislativa declara que los ciudadanos de Puerto Rico necesitan la adopción de la siguiente medida, dentro del poder de policía del ELA para el establecimiento y mantenimiento de oficinas públicas y gratuitas de empleo y para el proveimiento compulsorio de fondos de reserva para ser usados en beneficio de las <u>personas desempleadas</u>." (Énfasis nuestro).

Es obvio, pues, que sólo personas **desempleadas**, que sean **elegibles**, recibirán sus beneficios. La subsección 4(b) de la Ley enumera los requisitos, entre otros, de elegibilidad:

> "Un trabajador asegurado no será descalificado para recibir crédito por semana de espera o beneficios por cualquier semana de desempleo a menos que, con respecto a dicha semana, el Director [del Negociado de Seguridad de Empleo] determine que:
>
> (1) No estaba apto para trabajar o no estaba disponible para realizar trabajo adecuado durante dicha semana; <u>o</u>
>
> (2) abandonó un trabajo adecuado voluntariamente y sin justa causa...."
> (Énfasis nuestro). 29 L.P.R.A. sec. 704.

Más adelante, la subsección 2(s) define "semana de espera" como:

> "[L]a primera semana de desempleo que ocurra en un año de beneficio[3] en que el trabajador haya cumplido con todos los requisitos de la sec. [4 de esta Ley]." 29 L.P.R.A. sec. 702.

---

[3] Un "Año de Beneficio" se define como:

> "[E]l período de cincuenta y dos (52) semanas consecutivas comenzando con el domingo de la semana en que esa persona presenta una solicitud para que se determine su condición de asegurado; siempre y cuando, que en relación con esa semana la persona no tenga vigente un año de beneficios previamente establecido.

Finalmente, la subsección 2(u) define "semana de desempleo" como:

"[C]ualquier semana durante la cual no preste servicios en una semana completa de trabajo y que sus salarios o remuneración por trabajar por cuenta propia sean menores de vez y media     la cantidad de su beneficio semanal." 29 L.P.R.A. sec. 702.

Es obvio que para recibir beneficios al amparo de esta Ley, un trabajador **tiene** que reunir **todas** las condiciones de elegibilidad visualizados en la sección 4(b) de la Ley, **irrespectivo** de que estuviese desempleado en cualquier semana, según definido en las subsecciones 2(s) y 2(u). Dicho de otra forma, para cualificar y ser acreedor a recibir los beneficios, el trabajador tiene que cumplir con **ambos** requisitos: 1) haber abandonado su empleo involuntariamente y con justa causa; y 2) estar apto y disponible para trabajar. Por ende, si un trabajador no reúne **uno** de estos requisitos, queda descalificado. ¿Cumple Castillo Camacho ambos requisitos?

IV

La interrogante implica ver primeramente si abandonó su empleo involuntariamente y por justa causa.

El servicio de jurado es una de las "cargas – privilegios" que en una democracia la administración de justicia impone a la ciudadanía. Se trata de un mandato de ley a todos los que posean las cualificaciones requeridas. Los ciudadanos tienen la obligación pública de brindar su tiempo, dedicación y juicio para el beneficio de toda la sociedad. Por ello, su prestación no es un derecho o privilegio renunciable. La obligación de comparecer ante el tribunal en calidad de jurado es bajo apercibimiento de desacato. Código Enj. Criminal, Art. 205 (34 L.P.R.A., sec. 639).

No obstante, un ciudadano puede ser relevado al amparo de las Reglas 106 y 108 de Procedimiento Criminal. La Regla 106 enumera quienes, debido a la naturaleza de sus profesiones, están exentos; la 108 dispone que el tribunal deberá dispensar a los que corrieren peligro de grave daño o ruina de su propiedad, o la propiedad bajo su custodia, o debido al estado de su salud o enfermedad o muerte de algún miembro de su familia.

Vemos, pués, que aparte de las exenciones dispuestas por la Regla 106, la Regla 108 obliga al Tribunal a dispensar de servir como jurado a toda persona que pueda demostrar que, no obstante los honorarios a recibir, el servicio de jurado le causaría un grave daño patrimonial o económico.

En ausencia de una solicitud de dispensa al Tribunal por parte de Castillo, tenemos que concluir que éste abandonó su empleo involuntariamente y con justa causa. Cumple, pues, el primer requisito para cualificar y recibir beneficios de desempleo.

V

¿Estaba apto y disponible para trabajar?

Castillo Camacho postula que el Tribunal de Circuito de Apelaciones erró, pues la Ley debe interpretarse de manera que provea protección al mayor número de empleados posibles, y que él estaba "apto y disponible para trabajar", pues dicha frase debe interpretarse como

"aquella persona que está capacitada y que se encuentra en un ánimo favorable para realizar una tarea". (Apelación, pág. 4).

Coincidimos en que la propia Ley dispone que "será liberalmente interpretada para cumplir con su propósito de promover la seguridad de empleos... y proveer para el pago de compensación a personas desempleadas por medio de la acumulación de reservas." (29 L.P.R.A., sec. 701). Sin embargo, ello no significa que deba interpretarse de manera que se le reconozca beneficios a quienes no cualifican.

La respuesta a la interrogante planteada reside en determinar el significado de estar "apto y disponible para trabajar". Desafortunadamente la Ley no nos provee tal definición. Tampoco la hemos encontrado en el Reglamento del Negociado de Seguridad de Empleo. En ausencia de esas guías, recurrimos, entonces, a las reglas de hermenéutica en materia estatutaria.

La primera dispuesta en el Art. 15 del Código Civil, reza:

> "Las palabras de una ley deben ser generalmente entendidas en su más corriente y usual significación, sin atender demasiado al rigor de las reglas gramaticales, sino al uso general y popular de las voces." (31 L.P.R.A., sec. 15)

A tal efecto, como técnica analítica judicial, de ordinario acudimos al diccionario como fuente confiable para determinar el significado de una palabra. Vázquez Negrón v. E.L.A., 109 D.P.R. 19, 24 (1979). El Diccionario de la Real Academia Española (vigésima primera ed. 1992), define así las palabras "apto" y "disponible":

> "**Apto.** (del lat. *aptus*.) adj. Idóneo, hábil, a propósito para hacer alguna cosa."

> "**Disponible.** (de disponer.) adj. Dícese de todo aquello de que se puede disponer libremente o de lo que está pronto para usarse o utilizarse... Dícese de la persona libre de impedimento para prestar servicios a otra u otras."

Una simple lectura de dichas definiciones revela que "un trabajador apto y disponible para trabajar" es el que esté capaz y dispuesto a ocupar un puesto tan pronto esté disponible. No es suficiente que la persona se encuentre mentalmente en "**ánimo** favorable para realizar una tarea", según arguye Castillo Camacho. Es necesario trascender lo mental, esto es, que la persona no tenga obstáculo físico para aceptar el empleo.

Castillo Camacho pertenecía a un panel de jurados judicialmente secuestrado por cincuenta (50) días. Evidentemente, durante ese período no había forma de que pudiese aceptar un empleo, de haber estado el mismo disponible. No podemos perder de vista, además, que a pesar de que no recibía su salario, Castillo Camacho tenía reservado su empleo con Atlantic Telecom.

Concluimos, pues, que no estaba "apto y disponible" para trabajar. No cumple con el segundo requisito enumerado previamente y, por ende, no cualifica para recibir los beneficios de la Ley de Seguridad de Empleo.

VI

Mas allá de este análisis, concluir lo contrario, resultaría en la utilización del fondo de desempleo para el pago de los jurados. Ello sería contrario al propósito de la Ley de facilitar **oportunidades de empleo** a personas desempleadas mediante el pago de beneficios durante períodos de desempleo y manteniendo oficinas públicas de empleo.

Nótese que Castillo Camacho nunca solicitó ser relevado de su obligación de servir como jurado por ninguna de las razones mencionadas en la ley y la jurisprudencia, entre éstas, que el servicio como jurado habría de causarle un impacto económico severo. Debemos asumir que no cualificaba bajo ninguna de las exenciones y tenía, por tanto, la obligación estatutaria de servir.

Por último, cabe recordar que el servicio de jurado es uno remunerado.  El Artículo 2 de la Ley Núm. 31 de 9 de junio de 1969, 34 L.P.R.A., sec. 752, dispone respecto a los honorarios de los jurados, lo siguiente:

> "Se autoriza al Juez Presidente del Tribunal Supremo de Puerto Rico para que, considerando las cantidades disponibles en presupuesto y otros factores esenciales, promulgue reglamentos fijando los tipos de honorarios, incluyendo dietas y millaje para los testigos y jurados que comparezcan ante los tribunales de justicia de Puerto Rico.  Disponiéndose que dichos honorarios no serán menores de veinte (20) dólares por día de servicio; además se dispone un mínimo de veinticinco (25) dólares por comparecencia diaria para los ciudadanos residentes de los municipios de Vieques y Culebra."

Por los fundamentos expuestos, se dictará Sentencia confirmando al Tribunal de Circuito de Apelaciones.


JOSÉ A. ANDRÉU GARCÍA
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Reinaldo Castillo Camacho


     Demandante-Peticionario


       v.                                    AC-1996-70


Departamento del Trabajo
y Recursos Humanos


     Demandado-Recurrido


SENTENCIA


San Juan, Puerto Rico, a 29 de septiembre de 2000


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta sentencia confirmando la sentencia dictada por el Tribunal de Circuito de Apelaciones.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez emitió Opinión de Conformidad. El Juez Asociado señor Fuster Berlingeri concurre en el resultado sin opinión escrita. El Juez Asociado señor Rebollo López disiente con opinión escrita.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

REINALDO CASTILLO CAMACHO

      Apelante

        v.                                              AC-96-70

DEPARTAMENTO DEL TRABAJO Y
RECURSOS HUMANOS

      Apelado

**Opinión de conformidad emitida por el Juez Asociado señor Rivera Pérez.**

San Juan, Puerto Rico, a 29 de septiembre de 2000.

**La mayoría de este Tribunal concluye correctamente, que un empleado seleccionado para servir como jurado no es elegible para recibir los beneficios de la Ley de Seguridad de Empleo en Puerto Rico,[4] durante el período que cumple con dicha obligación. No obstante, por entender la gran importancia que tiene esta situación y con el propósito de enfatizar ciertos aspectos, emitimos por escrito nuestra opinión.**

---

**[4] Ley Núm. 74 del 21 de junio de 1956, según enmendada, 29 L.P.R.A. sec. 701 y ss.**

I

Con los objetivos de llevar justicia hacia la clase obrera, restituir el equilibrio de la economía de Puerto Rico, mantener el estándar de vida a un nivel razonable, evitar el perjuicio y sufrimiento que trae consigo el desempleo por razón de la mecanización y continuar aumentando, en términos generales, el bienestar de todos los puertorriqueños, la Asamblea Legislativa aprobó la Ley de Seguridad de Empleo de Puerto Rico, _supra_.[5] Para cumplir con los propósitos principales de esta ley, de promover la seguridad de empleos facilitando las oportunidades de trabajo y proveer para el pago de compensación a personas desempleadas por medio de la acumulación de reservas,[6] se adoptan unos métodos apropiados para reducir al mínimo el auge del desempleo y las graves consecuencias sociales del mismo.[7] Así, se establecen unas oficinas públicas y gratuitas de empleo, con el fin de promover las destrezas del trabajador desempleado y, a su vez, limitar el perjuicio y el sufrimiento que trae consigo el desempleo.[8] Además, se establece un fondo de reserva para ser usado en beneficio de las personas desempleadas. Es un fondo especial distinto y separado de todos los dineros o fondos del Estado Libre Asociado de Puerto Rico.[9]

Para que un trabajador pueda disfrutar de los beneficios que se conceden mediante la Ley de Seguridad en el Empleo, _supra_, éste tiene que cumplir dos requisitos, a saber: (1) estar desempleado; y (2) ser elegible para recibir los beneficios.[10] Por lo tanto, antes de analizar si una persona es elegible para recibir los beneficios de esta ley, se debe determinar si la persona está desempleada.

En la cúspide de todas las garantías constitucionales que tienen los ciudadanos se encuentra el derecho a ser juzgado en todo caso de delito grave por un jurado.[11] Tanto la Constitución de los Estados Unidos,[12] como la de Puerto Rico,[13] garantizan este derecho. La esencia del rol del jurado en nuestro sistema le atribuye la calidad de parte integrante

---

[5] Diario de Sesiones, Vol. 8, Tomo 3, 1956, pág. 1534.

[6] Sección 1, Ley Núm. 74 del 21 de junio de 1956, según enmendada, 29 L.P.R.A. sec. 701.

[7] Véase Exposición de Motivos, Ley Núm. 74 del 21 de junio de 1956, pág. 329.

[8] Diario de Sesiones, _supra_, págs. 1511, 1517-1540.

[9] Sección 10, Ley Núm. 74 del 21 de junio de 1956, según enmendada, 29 L.P.R.A. sec. 710.

[10] Dispone la sección 3 de la Ley de Seguridad en el Empleo, _supra_, 29 L.P.R.A. sec. 703, lo siguiente:

> (a) Pago de beneficios: Se pagarán beneficios del fondo a trabajadores que estén desempleados y sean elegibles a beneficio.

[11] O.E. Resumil, _Derecho Procesal Penal_, Hato Rey, Equity Publishing Company, 1990, T. I, pág 67.

[12] Enmienda VI de la Constitución de los Estados Unidos.

[13] Constitución del Estado Libre Asociado de Puerto Rico, Artículo II, sec. 11.

de la administración de la justicia.[14]  Obviamente, un empleado que es llamado a servir como jurado, no debe ser clasificado como desempleado durante el período que cumple con dicha función, por lo que hace innecesario el análisis sobre si es elegible para los beneficios de desempleo.

La Asamblea Legislativa ha atendido mediante legislación la situación de una persona que está desempeñando sus funciones como empleado y es requerida por un tribunal para que actúe como jurado por un determinado lapso de tiempo.  Dichos estatutos se han limitado a la inmediata reinstalación al puesto o empleo,[15] o a exigir responsabilidad civil al patrono que despida o instale en una plaza de inferior categoría, status o retribución a un trabajador por éste haber servido de jurado.[16]  Inclusive, se provee para que el tiempo que una persona sirva como jurado, puede cargar ese tiempo a su licencia regular de vacaciones.[17] En cuanto al aspecto de la compensación, la ley autoriza al Juez Presidente del Tribunal Supremo de Puerto Rico a emitir normas fijando los tipos de honorarios, incluyendo dieta y millaje para los jurados que comparezcan ante los tribunales.[18]  Esta compensación se provee tomando en consideración las cantidades disponibles en el presupuesto de la Rama Judicial.[19]

Es evidente que la Asamblea Legislativa no considera que un empleado que es llamado a servir como jurado, sea considerado como desempleado durante el tiempo que cumple su obligación y, en consecuencia, pueda participar de los beneficios que provee la Ley de Seguridad de Empleo de Puerto Rico, supra. Según se desprende de la Ley de Seguridad de Empleo, supra, de su Exposición de Motivos y de su Historial Legislativo, resulta evidente que la situación de autos no es la que se quiso remediar mediante este estatuto.  No podemos, en vías de resolver esta situación, permitir que se utilice el fondo de desempleo para el pago de los jurados.

Aún cuando entendemos la difícil situación por la cual pueden pasar aquellos empleados que son llamados a servir de jurado, ya sea económica o de otra índole, el Tribunal Supremo no es el foro adecuado para corregir tal situación.  La formulación de política pública sobre tal aspecto le corresponde a los poderes políticos electos por el pueblo, no a este

---

[14] O.E. Resumil, op. cit., citando a Ismael Betancourt, Los Derechos del Acusado, San Juan, 1975, págs. 78-79.

[15] Ley Núm. 87 del 26 de junio de 1964, 29 L.P.R.A. sec. 152 (a) y (b).

[16] Ley Núm. 22 del 23 de mayo de 1984, 29 L.P.R.A. sec. 152(c) y (d).

[17] Íd.

[18] Ley Núm. 31 de 9 de junio de 1969, sección 752 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 752;  Reglamento Fijando Tipos de Honorarios, Gastos de Viajes y Dietas para Jurados y Testigos, según enmendado, 4 L.P.R.A. Ap. X, sec. 1 y ss.

[19] Íd.

**Tribunal. El respeto a la separación de poderes contemplados en nuestra Constitución nos impide tal actuación.**

**Por los fundamentos antes expuestos, emitimos por escrito voto de conformidad con la Opinión del Tribunal.**

Efraín E. Rivera Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Reinaldo Castillo Camacho

**Apelante**

v.                                         AC-1996-70

Departamento del Trabajo y
Recursos Humanos

Apelado

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 29 de septiembre de 2000

En el día de hoy, una mayoría de los integrantes del Tribunal erróneamente determina que una persona que es seleccionada para servir como jurado en nuestra jurisdicción <u>no</u> es elegible para recibir los beneficios por desempleo que provee la Ley de Seguridad de Empleo de Puerto Rico, 29 L.P.R.A. sec. 701 et seq; siendo dicha errónea determinación el producto de un contradictorio razonamiento en que incurre la Mayoría y del hecho que ésta convenientemente se olvida del propósito que inspiró dicha legislación.

Debe enfatizarse, además, que la decisión mayoritaria emitida inexplicablemente                       pasa                       por

alto --al extremo de no discutirlo-- el nocivo efecto o consecuencia que la misma tendrá en la práctica del derecho penal en nuestra jurisdicción y, sobre todo, el hecho de que dicha decisión afecta, de manera directa, el derecho constitucional que tiene todo imputado de delito grave en nuestra jurisdicción a ser juzgado por un jurado, compuesto el mismo por doce (12) vecinos de la comunidad que sean representativos de ésta.

I

**Reinaldo Castillo Camacho trabajaba para Atlantic Telecom cuando, el 5 de octubre de 1994, fue citado para servir como jurado en el caso Pueblo v. Nelson Ortiz Alvarez y otros, Núm. ADC 93G0015, en el Tribunal Superior, Sala de Aguadilla. El 24 de octubre de 1994, por orden del Juez Superior, Hon. Reinaldo Franqui Carlo, el panel de jurado en el que servía Castillo Camacho fue "secuestrado" por aproximadamente cincuenta (50) días. Mediante carta, fechada el 21 de octubre de 1994, el patrono de Castillo Camacho, Atlantic Telecom, le informó a éste que, no obstante estar en disposición de "garantizarle" su trabajo, antigüedad y plan médico en dicha Corporación, no le satisfaría su salario. Como resultado de esta acción, Castillo Camacho solicitó beneficios de desempleo bajo la Ley de Seguridad de Empleo, ante.**

**El 12 de mayo de 1994, la División de Seguro por Desempleo, adscrita al Negociado de Seguridad de Empleo, determinó que Castillo Camacho no era elegible para recibir los beneficios por desempleo, bajo el fundamento de que éste no estaba "apto y disponible" para realizar trabajo para el periodo en que solicitó los beneficios por desempleo.**

Inconforme con dicha determinación, el 5 de diciembre de 1994, Castillo Camacho solicitó audiencia ante un árbitro en la División de Apelaciones del Negociado de Seguridad de Empleo. Celebrada la correspondiente vista, el 17 de enero de 1995, la División de Apelaciones confirmó la determinación de la División de Seguro por Desempleo, a los efectos de que Castillo Camacho no estaba "apto y disponible" para trabajar, según requiere la Sección 4(b)(1) de la Ley de Seguridad de Empleo de Puerto Rico, ante.

Oportunamente, Castillo Camacho interpuso un recurso de apelación ante el Secretario del Trabajo y Recursos Humanos, impugnando la resolución emitida por el árbitro. El 23 de febrero de 1995, el Secretario del Trabajo confirmó la resolución apelada. El 19 de mayo de 1995, Castillo Camacho recurrió mediante recurso de revisión ante el Tribunal de Primera Instancia, Sala Superior de Aguadilla.

El foro de instancia revocó la Resolución del Negociado de Seguridad de Empleo, concluyendo que: "el reclamante sí estaba apto y disponible para trabajar por dicho periodo de tiempo, pero es el propio Estado, a través del tribunal de justicia que provoca la no disponibilidad. Obviamente, el reclamante está cumpliendo un deber ministerial que le impone el Estado... Bajo ninguna circunstancia el abandono del trabajo o el no estar disponible para realizarlo puede atribuirse al reclamante". En consecuencia, dicho foro

judicial resolvió que Castillo Camacho tenía derecho a recibir los beneficios de desempleo por el tiempo que prestó servicio como jurado.

El Departamento del Trabajo y Recursos Humanos del Estado Libre Asociado de Puerto Rico acudió en revisión ante el Tribunal de Circuito de Apelaciones. El foro intermedio apelativo emitió sentencia mediante la cual revocó al tribunal de instancia, determinando que Castillo Camacho no estaba apto ni disponible para trabajar, y que por tal motivo no era acreedor para recibir los beneficios por desempleo durante el tiempo que sirvió como jurado.

Inconforme con la determinación del foro apelativo intermedio, Castillo Camacho acudió ante este Tribunal imputándole haber errado al así actuar y decidir.[20] Acogiendo el recurso radicado como uno de certiorari, expedimos el mismo.


II
El Artículo II, Sección 11 de la Constitución del Estado Libre Asociado de Puerto Rico establece que "[e]n los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito..." El Tribunal Supremo de Estados Unidos ha resuelto que la selección de los miembros del jurado de un grupo representativo de la comunidad es una característica esencial del derecho a juicio por jurado consagrado en la Sexta Enmienda de la Constitución de los Estados Unidos. Taylor v. Louisiana, 419 U.S. 522, 530 (1975). Limitar el servicio de jurado a solamente algunos grupos especiales, o excluir segmentos particulares que desempeñan papeles importantes en la comunidad, contraviene el concepto constitucional de un juicio por jurado. Pueblo v. Laboy, 110 D.P.R. 164.
El derecho a juicio por jurado consagrado en nuestra Constitución también exige que los miembros del jurado sean seleccionados de un grupo de personas que represente adecuadamente a la comunidad. De no ser así, quedaría desvirtuado el derecho a juicio por jurado. Pueblo v. Laboy, ante. Resulta importante señalar, adicionalmente, que la infracción al anterior derecho tiene relación directa con, o causa, a su vez, que se infrinjan otros derechos garantizados por nuestra Constitución, tales como el derecho de tener un juicio justo e imparcial e, incluso, con el derecho de todo imputado de delito a que se le presuma inocente hasta tanto su culpabilidad sea probada, más allá de duda razonable, determinación que hará en la mayoría de los casos --precisamente-- un jurado compuesto por doce (12) ciudadanos representativos de la comunidad en que el imputado reside.
Este Tribunal, como máximo intérprete de las leyes en nuestra jurisdicción, tiene la ineludible obligación de interpretar las leyes de forma tal que los derechos de nuestros conciudadanos no sean violados. En consecuencia, y en lo pertinente, cualquier interpretación judicial nuestra que menoscabe los derechos constitucionales de aquellos ciudadanos, que sean

---

[20] 1) "Erró el Honorable tribunal al determinar que al caso de marras le era de aplicación la sección 4(b)(1) de la Ley de Seguridad de Empleo de Puerto Rico, 29 L.P.R.A. sec. 704(b)(1), y no la sección 704 (b)(2).

2) Erró el Honorable Tribunal al determinar que el estado no provocó que el recurrido tuviera que abandonar su trabajo.

3) Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que el recurrente no tenía derecho a recibir los beneficios de la ley de seguridad de empleo por no haber sido despedido.

4) Erró el Honorable Tribunal de Circuito de Apelaciones al determinar que es la agencia la que tiene la pericia para entender en casos como el de autos en que se plantea la reivindicación de derechos constitucionales.

5) Viola garantía constitucional de la Igual Protección de las Leyes la determinación del Honorable Tribunal de Circuito de Apelaciones excluyendo al recurrente de los beneficios concedidos por la Ley de Seguridad de Empleo de Puerto Rico, 29 L.P.R.A. 704(b)(2)."

acusados de la supuesta comisión de delito grave, <u>no</u> tiene cabida en nuestra jurisdicción y debe ser evitada a toda costa por este Tribunal cuando la misma resulta violatoria de nuestra Constitución.

Resulta ser un secreto a voces --precisamente por la "escasez" de personas idóneas para servir como jurados-- que en la actualidad los imputados de delito en nuestra jurisdicción <u>no</u> están siendo juzgados por jurados compuestos por doce (12) personas realmente representativos de la comunidad y sí mayormente por los llamados "jurados profesionales"; esto es, por personas retiradas, o desempleadas, que no tienen otra labor que hacer.

Nuestros jueces de instancia, seres humanos compasivos y comprensivos, se ven en la <u>obligación moral</u> de continuamente estar teniendo que excusar, de servir como jurados, a personas cualificadas precisamente por las razones que se aducen en el caso de autos, ello a pesar de que no se dan las condiciones o preceptos contenidos en la Regla 108 de las Reglas de Procedimiento Criminal. Ello causa, repetimos, que los miembros del jurado que juzgan a nuestros conciudadanos no sean siempre los más idóneos.

Esta es una situación no solo lamentable sino que, más importante aun, violatoria de las disposiciones pertinentes de nuestra Constitución y que el presente recurso nos brinda la oportunidad de corregir; oportunidad que la Mayoría desperdicia incomprensiblemente al hacer una interpretación errónea y estrecha de la legislación en controversia. <u>Veamos</u>.

III

Para garantizar el derecho constitucional a ser juzgado por un jurado, que tiene todo acusado de delito grave, el Estado le impone un <u>deber u obligación</u> a los ciudadanos de servir como jurado siempre y cuando cumplan con los requisitos de elegibilidad establecidos en la Regla 96 de Procedimiento Criminal.[21] Por su parte, la Regla 106 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, establece que personas, por razón de su profesión o trabajo, están exentas de servir como jurado. Por otro lado, la Regla 108 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, establece claramente que el tribunal no podrá "dispensar a nadie de servir como jurado por motivo trivial, ni por inconveniencias o molestias en sus negocios, sino exclusivamente en caso de que corriere peligro de grave daño o ruina su propiedad, o la propiedad bajo su custodia, o exigiere su ausencia el estado de su salud o la enfermedad o muerte de algún miembro de su familia".

Además, el Artículo 205 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 639, establece que, una persona que es citada para comparecer como jurado, y no lo hace, podría ser encontrada incursa en desacato por el tribunal. Esto, como hemos visto, para tratar de garantizar que el jurado esté compuesto por un grupo idóneo de personas, representativo el mismo de personas de la comunidad.

Por otro lado, nuestra Ley de Seguridad de Empleo de Puerto Rico, ante, <u>no</u> deja margen a dudas sobre su propósito remedial. En la Exposición de Motivos se expresa:

> **"La inseguridad económica producida por el desempleo es una seria amenaza a la salud, seguridad y bienestar del pueblo de Puerto Rico. El desempleo es, por lo tanto, materia de interés e incumbencia general que requiere la adopción por la Asamblea Legislativa de medidas adecuadas tendientes a evitar su desarrollo y a aliviar la carga que el mismo produce y que recae sobre el trabajador desempleado y su familia."**

En varias ocasiones hemos tenido la oportunidad de interpretar la Ley de Seguridad de Empleo, ante. Hemos expresado, reiteradamente, que la misma debe ser <u>interpretada</u>

---

[21]    "Serán elegibles para actuar como jurados las personas que reúnan las siguientes condiciones:

    (a)    Ser ciudadano de los Estados Unidos y del Estado Libre Asociado de Puerto Rico.
    (b)    Ser mayor de dieciocho (18) años.
    (c)    Haber residido en Puerto Rico por un (1) año y en el distrito noventa (90) días antes de elegírsele e inscribir su nombre en la lista de jurados.
    (d)    Saber leer y escribir español.
    (e)    No haber sido convicto de delito grave o de cualquier otro delito que envuelva depravación moral.
    (f)    Hallarse en posesión de sus facultades físicas y mentales.
    (g)    No haber sido designado para actuar como jurado en un panel regular en cualquier sala del Tribunal Superior o no haber servido como tal durante el año natural inmediatamente anterior." 34 L.P.R.A. Ap. II, R. 96.

liberalmente "para cumplir su propósito de promover la seguridad de empleos... y proveer para el pago de compensación a personas desempleadas por medio de la acumulación de reservas". Mas aun, hemos adoptado la interpretación de otras jurisdicciones a los efectos de que "[l]a Ley de Seguro de Desempleo debe interpretarse de manera que provea protección al mayor número de empleados posibles..." (citas omitidas y énfasis suplido.) Sec. del Trabajo v. Asoc. Señoras Damas, 94 D.P.R. 137 (1967).

Además, hemos reiterado que, "en materia de hermenéutica legal sólo hay una regla que es 'absolutamente invariable' y ésta es la de que debe describirse y hacerse cumplir la verdadera intención y deseo del poder legislativo. En otras palabras, la regla de oro en materia de interpretación de leyes es que el objeto principal de todas las reglas de hermenéutica no es conseguir un objetivo arbitrario preconcebido sino dar efecto al propósito del legislador". Pueblo v. Zaya Rodríguez, res. el 17 de febrero de 1999, 99 TSPR 19.

Como correctamente se expresa en la Opinión mayoritaria, para que un trabajador tenga derecho a recibir los beneficios que provee la Ley de Seguro por Desempleo, el trabajador tiene que cumplir con dos (2) requisitos, a saber: 1) haber abandonado su empleo involuntariamente y con justa causa, y 2) estar apto y disponible para trabajar.

Aun cuando el peticionario Castillo Camacho, realmente, no abandonó su trabajo --de hecho, y conforme surge de la evidencia presentada, él conserva su trabajo con Altantic Telecom-- éste se vio obligado, por ley, a dejar de asistir al mismo ya que tiene el deber u obligación legal de servir como jurado. Así, incluso, lo acepta la Mayoría, la cual da por cumplido este primer requisito por ficción de ley.

La Mayoría, sin embargo, de manera incomprensible no aplica este mismo razonamiento al segundo de los requisitos, concluyendo por el contrario que el peticionario no tiene derecho a recibir los beneficios que solicita por cuanto alegadamente Castillo Camacho no está "apto y disponible para trabajar". No podemos suscribir esa posición. Entendemos, por el contrario, que éste está "apto y disponible" para trabajar con Atlantic Telecom; no puede hacerlo, sin embargo, por mandato de ley. En otras palabras, la obligación legal que tiene de servir como jurado no solo causa que el peticionario haya "abandonado el trabajo involuntariamente y con justa causa" --el primer requisito-- sino que evita que él esté "apto y disponible" para trabajar, esto es, el segundo de los requisitos.

Utilizar el argumento de la obligación legal para excusar del cumplimiento con, o explicar, el primero de los requisitos, y no hacerlo en relación con el segundo, es una grave contradicción en la que incurre la Mayoría que hace que el resultado al que llega sea uno erróneo, e injusto, en derecho.

**IV**

En resumen, en el día de hoy una mayoría de los integrantes del Tribunal <u>desperdicia</u> la oportunidad de remediar o corregir --aun cuando ello sea parcialmente-- una <u>intolerable situación</u> que ha prevalecido por años en nuestra jurisdicción; situación que afecta no solo a la ciudadanía en general sino que a las personas que son acusadas de la supuesta comisión de un delito grave.

Por un lado, el Estado intenta obligar a los ciudadanos de este País a servir como jurados, negándole, por el otro lado, el pago de una suma razonable, por concepto de dietas, por la encomiable y necesaria labor que éstos realizan.

Esta situación, injusta por demás, a su vez "obliga" a nuestros jueces de instancia a excusar de servir como jurados a la mayoría de las personas que son seleccionadas para tal labor. Ello causa que las personas que a diario actúan como jurados en nuestros tribunales de instancia no sean las más idóneas; privando a los imputados de delito de su derecho constitucional a ser juzgados por doce (12) de sus vecinos, personas verdaderamente representativas de la comunidad en que aquellos residen.

Una interpretación, como la que proponemos, de la Ley de Seguridad de Empleo proveería, por lo menos, un paliativo o solución a la antes mencionada situación ya que aliviaría la estrechez económica que, de ordinario, sufren los ciudadanos responsables, y respetuosos de la ley, que viven en este País y que pretenden cumplir con sus obligaciones ciudadanas al servir como jurados.

Es por ello que disentimos.


**FRANCISCO REBOLLO LÓPEZ**
**Juez Asociado**